# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GREGORY RAYFORD (Y-11287), | ) |
| Plaintiff, | ) |
| v. | ) No. 17 C 5942 |
| | ) Judge Sara L. Ellis |
| THOMAS J. DART, SHERIFF OF COOK COUNTY ILLINOIS, and JANE AND JOHN DOES, in their individual capacities, | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Gregory Rayford, an inmate currently confined at the Robinson Correctional Center, injured his left ankle playing basketball while detained at the Cook County Jail (the "Jail"). After allegedly failing to receive appropriate treatment for the ankle injury, he sued Defendants Thomas J. Dart, as Sheriff of Cook County, Illinois, and Jane and John Does, unknown correctional officers and medical staff at the Jail, for deliberate indifference to his serious medical needs under 42 U.S.C. § 1983. Dart moves to dismiss all claims brought against him on the basis that Rayford has not adequately pleaded a claim under § 1983. Because Rayford has not sufficiently alleged a *Monell* claim against Dart in his official capacity and acknowledges that he does not have an individual capacity claim against Dart, the Court dismisses any substantive claim against Dart without prejudice but keeps Dart as a placeholder defendant to facilitate the identification of the Jane and John Doe Defendants.

# BACKGROUND[1]

While an inmate at the Cook County Department of Corrections ("CCDOC"), Rayford injured his left ankle playing basketball on July 29, 2015, at approximately 4:30 p.m. Rayford alerted a supervising corrections officer in his Division 11 housing unit of his injury and severe pain. The corrections officer notified the Jail's dispensary. At the dispensary, Rayford reported his pain as a "level 10." Doc. 23 ¶ 12. A nurse examined Rayford's ankle, wrapped his ankle and foot, and gave him Ibuprofen and a set of crutches. At 7:30 p.m. that day, Rayford went to Cermak Health Services ("Cermak"), the health services provider for the Jail, to see a physician. A nurse and doctor saw him at 5:00 a.m. the following day, more than nine hours after Rayford arrived at Cermak. Rayford told the doctor that his pain level remained a 10. The doctor ordered an x-ray and administered pain medication to Rayford before officers transported him back to Division 11 of the Jail.

On the way back to Division 11, a corrections officer told Rayford he could not use crutches inside the housing unit. The officer placed the crutches outside the unit after Rayford made his way to his cell. Later the same morning, Rayford returned to Cermak for x-rays of his injured ankle. Once he returned to Division 11, Rayford again had to leave his crutches behind, relying instead on doors, tables, and other inmates to move around the unit. Although Rayford took Naproxen to manage his pain, it did not help, leading the doctor at the dispensary to give him Ibuprofen. About one month after the injury, Rayford met with a doctor again, complaining that the Ibuprofen also did not alleviate his pain. But given the option of taking Ibuprofen or Tylenol, Rayford chose to continue with Ibuprofen. Rayford continued to complain of pain and

---

[1] The facts in the background section are taken from Rayford's first amended complaint and are presumed true for the purpose of resolving Dart's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

ankle tightness through November. In December, Rayford saw a foot specialist at Cermak. After reviewing Rayford's x-rays, the foot specialist concluded that Rayford had partially torn the Achilles tendon of his left ankle or had a healing complete tear. The specialist noted he could not understand how the prior x-ray examiners had missed the tear and prescribed therapy for Rayford's foot and ankle. Rayford only attended one therapy session before his transfer to an Illinois Department of Corrections facility on or about February 11, 2016.

Dart, as Sheriff of Cook County, Illinois, has responsibility for running and supervising all operations of the CCDOC and the Jail. Defendants Jane and John Does, whose identities are unknown to Rayford at this time, represent both correctional officers employed by the CCDOC, with the responsibility for guarding and ensuring the safety and physical well-being of detainees, and medical staff employed by Cermak who are responsible for Jail detainees' medical care.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

**I.    Official Capacity Claim**

Rayford alleges that Dart exhibited deliberate indifference to his serious medical needs through the failure and refusal to provide him with reasonable medical care or treatment. Although the first amended complaint does not clearly assert a substantive official capacity claim against Dart, because the parties have addressed this claim in their briefing on the motion to dismiss, the Court considers whether Rayford has sufficiently alleged a claim against Dart in his official capacity pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

A plaintiff may base *Monell* liability on (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). The policy or practice "must be the direct cause or moving force behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (citation omitted) (internal quotation marks omitted). Rayford appears to pursue a claim under the second prong.[2] To adequately allege a *Monell* widespread practice claim, Rayford must "plead[ ] factual content that allows the Court to draw the reasonable inference that the [Sheriff] maintained a policy, custom or practice" that contributed to the alleged violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks omitted).

---

[2] Rayford does not include allegations that Dart has final policymaking authority or seem to pursue this theory for purposes of establishing his *Monell* claim either in his first amended complaint or response to the motion to dismiss. Therefore, the Court does not consider whether Rayford has stated a *Monell* claim under the third prong.

4

Dart's main argument for dismissal of an official capacity claim against him is that Rayford relies only on his own experience, which cannot establish a widespread practice. But recently, the Seventh Circuit has reminded courts not to apply a "heightened pleading standard" to *Monell* claims. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)). This means that a plaintiff need not identify other examples of the alleged practice to state a *Monell* claim but rather, may rely solely on his own experience. *See id.* at 844 (noting that plaintiff "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process"); *Williams v. City of Chicago*, No. 16-cv-8271, 2017 WL 3169065, at *8–9 (N.D. Ill. July 26, 2017) ("Post-*White* courts analyzing Monell claims . . . have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff." (collecting cases)).

But even though Rayford may rely on his own experiences, he must still include some allegations to allow the inference that Dart maintained a policy or practice to cause deliberate indifference to his medical needs, as opposed to his injuries arising from a random event. *See Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (a *Monell* claim requires "a *widespread practice* that permeates a critical mass of an institutional body," not "individual misconduct"). Rayford has failed to do so here, where the first amended complaint makes no suggestion that the delays in treatment or decisions in care arose from policies or practices instituted by Dart so as to suggest a widespread issue. *See Harris v. Wexford Health Sources, Inc.*, No. 15-cv-10936, 2017 WL 4467480, at *3–4 (N.D. Ill. Oct. 6, 2017) (dismissing *Monell* claim against Wexford Health Sources where complaint did not adequately provide facts to

5

support how plaintiff's injuries were caused by Wexford's alleged policies or practices). On the contrary, one could read Rayford's treatment by the Cermak medical staff as a random event, which would not support a *Monell* claim.³ Rayford's situation suggests a misdiagnosis by an unidentified doctor, which prolonged his pain, and not a practice of denying medical care or ignoring the medical needs of detainees. Indeed, Rayford acknowledges in his first amended complaint that he consistently saw medical personnel, including a foot specialist after his injury did not heal, and received pain medicine throughout. Because Rayford has not sufficiently alleged a custom or policy to support a *Monell* claim, the Court cannot allow Rayford to proceed against Dart in his official capacity and dismisses any *Monell* claim for deliberate indifference without prejudice.

## II.     Individual Capacity Claim

Dart also argues that Rayford has failed to sufficiently plead an individual capacity claim against him. Rayford acknowledges that he has no individual capacity claims against Dart but has instead named him as a placeholder while Rayford seeks to identify Defendants Jane and John Does. As noted in the Court's initial review order, Dart, as the supervisor of the Jail, appears to be the best person to name for purposes of facilitating identification of the Jane and John Doe Defendants. *See* Doc. 7 at 3 (citing *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 789–90 (7th Cir. 1995); *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 556 (7th Cir. 1996)). Although Rayford has not sufficiently alleged an individual capacity claim against Dart, Dart must remain in this case as a placeholder defendant until Rayford identifies the Jane and John Doe Defendants. To that end, the Court encourages Rayford to proffer interrogatories to Dart

---

³ If Rayford chooses to amend his complaint to replead his *Monell* claim concerning his medical treatment, he should consider whether Cook County, which includes Cermak, is the proper Defendant for such a claim.

6

that would allow him to identify these unknown Defendants.[4]  Once Rayford learns of their identities, he should file a second amended complaint naming these individuals and terminating Dart as a Defendant.

## CONCLUSION

For the foregoing reasons, the Court grants Dart's motion to dismiss [32].  The Court dismisses Rayford's claims against Dart without prejudice.  However, Dart remains a Defendant in his official capacity solely to facilitate identification of the Jane and John Doe Defendants.

Dated: October 30, 2018

SARA L. ELLIS
United States District Judge

---

[4] In seeking to identify these unknown Defendants, Rayford should keep in mind the applicable statute of limitations for his claims and whether any claims against the unknown Defendants, once identified, could relate back to the filing of his initial complaint.